IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CHRISTINA H.,**

      **Plaintiff,**

v.

                              Civil Action 2:22-cv-3888
                              Judge Sarah D. Morrison
                              Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF**
**SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

      Plaintiff, Christina H., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability insurance benefits ("DIB") and supplemental security income ("SSI"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Amended Statement of Errors (ECF No. 12), the Commissioner's Memorandum in Opposition (ECF No. 14), Plaintiff's Amended Reply (ECF No. 17), and the administrative record (ECF No. 9). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

1

I. BACKGROUND

Plaintiff protectively filed her applications for DIB and SSI on November 26, 2019, alleging that she has been disabled since April 1, 2018, due to cervical stenosis, fibromyalgia, foot issues, high blood pressure, Hashimoto's thyroiditis, restless leg syndrome, major depressive disorder, post traumatic stress disorder, and social anxiety. (R. at 210-22, 257.) Plaintiff's applications were denied initially in May 2020 and upon reconsideration in August 2020. (R. at 75-112, 114-23.) Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). (R. at 143-57.) ALJ Noceeba Southern held a telephone hearing on October 1, 2021, at which Plaintiff, who was represented by counsel, appeared and testified. (R. at 48-74.) A vocational expert ("VE") also appeared and testified. (*Id.*) On December 2, 2021, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 17-47.) The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-9.)

II. RELEVANT RECORD EVIDENCE

The Undersigned has thoroughly reviewed the transcript in this matter, including Plaintiff's medical records, function and disability reports, and the testimony as to her conditions and resulting limitations. Given the claimed errors raised by Plaintiff, rather than summarizing that information here, the Undersigned will refer and cite to it as necessary in the discussion of the parties' arguments below.

### III. ADMINISTRATIVE DECISION

On December 2, 2021, the ALJ issued her decision. (R. at 17-47.) The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2023. (R. at 22.) At step one of the sequential evaluation process,[1] The ALJ found that Plaintiff has not engaged in substantially gainful activity since April 1, 2018, the alleged onset date. (*Id.*) The ALJ found that Plaintiff has the severe impairments of obesity; degenerative disc and joint disease of the cervical and lumbar spines; plantar fasciitis and foot degeneration with surgical intervention; left ankle fracture; a depressive disorder; an anxiety disorder; and a posttraumatic stress disorder (PTSD). (R. at 23.) The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 25.)

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

Before proceeding to Step Four, The ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, [the ALJ] finds that the [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [Plaintiff] would require a sit/stand option every hour for 3-4 minutes on task. She could stand/walk for 4 hours during an 8-hour workday and could sit for 6 hours during an 8-hour workday. [Plaintiff] could occasionally operate foot controls with the bilateral lower extremities. She could occasionally climb ramps and stairs, but should avoid climbing ladders, ropes, and scaffolds. [Plaintiff] could frequently stoop and kneel, but could only occasionally crouch and crawl. She could perform simple, routine tasks but not at a fast pace or with strict production quotas. [Plaintiff] could work in a setting with only occasional changes and occasional decision making in order to provide low stress. She could have occasional, superficial interaction with coworkers, supervisors, and the public where superficial is defined as that which is beyond the performance of job duties and job functions for a specific purpose and short duration. Changes would need to be well explained and where there are such changes supervisory support would be provided during change over.

(R. at 24-25.)

At step four of the sequential process, The ALJ determined that Plaintiff is unable to perform her past relevant work as a telephone information clerk, cashier, or a childcare worker. (R. at 38-39.) Relying on the VE's testimony, The ALJ concluded at Step 5 that Plaintiff can perform other jobs that exist in significant numbers in the national economy such as an assembler, kitchen aide or labeler. (R. at 39-40.) She therefore concluded that Plaintiff was not disabled under the Social Security Act at any time since April 1, 2018. (R. at 40.)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives [Plaintiff] of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V. ANALYSIS

On appeal, Plaintiff asserts two errors in the ALJ's formulation of her RFC. (ECF No. 12 at 10-17.) First, Plaintiff contends that the RFC is not supported by substantial evidence because the VE substituted his own definition of the term "superficial" in place of the ALJ's definition

thereby precluding the ALJ's reliance on that testimony as support for the ALJ's Step Five conclusions. (*Id.* at 10-13.) Further, Plaintiff asserts that the ALJ failed to articulate her reasons for determining that Plaintiff required a "sit/stand option every hour for 3-4 minutes on task." (*Id.* at 13-17.) The Undersigned considers each of these issues in turn.

### A. The VE Testimony

Plaintiff's first claimed error relates to one particular portion of the RFC formulated by the ALJ restated here for ease of reference:

> [Plaintiff] could have occasional, superficial interaction with coworkers, supervisors, and the public where superficial is defined as that which is beyond the performance of job duties and job functions for a specific purpose and short duration.

(R. at 27.) The claimed error arises from certain discrete exchanges at the hearing between the ALJ and the VE and then Plaintiff's counsel and the VE.

Initially, the ALJ posed the following hypothetical to the VE:

> Q. … Can you please assume a hypothetical individual of the same age, education, background, and work experience as the claimant with the residual functional capacity to perform light work except that this hypothetical individual will benefit from a sit/stand option every hour for three to four minutes on task. This hypothetical individual should be able to tolerate occasional foot controls with the bilateral lower extremity; occasional ramps or stairs; should avoid ladders, ropes or scaffolds; frequent stooping, kneeling; occasional crouching, crawling; simple routine tasks; no fast paced work or strict production quotas; occasional changes and occasional decision-making in order to provide low stress; occasional super[ficial] interaction with co-workers and supervisors and the public with superficial being that which is beyond the performance of job duties and job functions for a specific purpose in a short duration.
>
> Any changes should be well-explained and where there are such changes supervisory support provided doing changeover. Can this hypothetical individual perform any past work or any other work in the national economy?

In response, the VE testified as follows:

>A. I don't think any past work, Your Honor. All of her past work was too much interaction. As to other work I'll give you examples. These will be light, SVP:2, and unskilled. First job is assembler, 706.684-022, about 110,000 in the national economy; next job is a kitchen aide, 311.677-010, about 105,000; and labeler, L-A-B-E-L-E-R, labeler, 920.687-126, about 120,000. Those are illustrative, Your Honor, all SVP: 2, unskilled and light.

(R. at 70.)

Following the ALJ's framing of two additional hypotheticals building from the initial hypothetical, Plaintiff's counsel and the VE engaged in the following exchange:

>Q. Okay. And could you tell us how do you interpret – what is your understanding of the Judge's social restrictions in Hypothetical number 1?
>
>A. I don't – I don't know what you want me to say.
>
>Q. What does her definition of superficial – how do you interpret that?
>
>A. Well, superficial is pretty much what we do just day-to-day, here's this, here's that, how many of these, how many of those, those kinds of things, things that don't involve the emotional or deep intellectual conversation.
>
>Q. Okay. In the workplace is it necessary for co-workers to talk about things that are related to the job that they're doing? I assume that that's important.
>
>A. Sure.
>
>Q. So if somebody weren't able to –okay. Somebody weren't able to communicate about job duties, that would be a problem?
>
>A. Yes.

(R. at 72.)

By way of apparent follow up, at the conclusion of counsel's questioning, the ALJ stated:

>ALJ: I just want to be clear, too, for the record that the way I defined superficial is that how I always define it and it is that which is beyond the performance of job duties and job functions. So just so that the record is clear. Okay.

(R. at 73.)

In Plaintiff's view, it is not clear whether the VE failed to pay attention during the ALJ's statement of the hypothetical or disregarded the ALJ's definition of "superficial," but it is "clear" that the VE's testimony was based on a definition "drastically different" from the ALJ's. (ECF No. 10 at 11.) According to Plaintiff, this precluded the ALJ's reliance on the VE's testimony, leaving without substantial support the ALJ's conclusion that Plaintiff could have performed jobs that existed in significant numbers in the national economy. Additionally, Plaintiff contends that the VE's subsequent testimony in response to counsel's questions confirmed that, under the ALJ's definition of the term "superficial," Plaintiff's ability to work is precluded. As Plaintiff puts it, the VE "confirmed that it is necessary for co-workers to talk about things that are related to the job that they're doing, and that if someone was limited to communicating about things outside the scope of work that would be a problem." (*Id*. at 12.) Plaintiff asserts, in part, that remand for further proceedings under this circumstance would serve no practical purpose and requests remand for an immediate award of benefits.

The Commissioner makes two points in response. First, counsel's asking the VE for an interpretation of the word "superficial" invited the use of different wording and does not demonstrate that the VE used a definition different from the ALJ's in responding to the ALJ's hypothetical. Further, the ALJ's RFC did not limit Plaintiff's ability to communicate regarding job duties or job functions because the "superficial" limitation was applicable only to communications

8

"beyond the performance of job duties and job functions." Thus, the VE's testimony that it would be a "problem" if somebody were not able to communicate about job duties has no impact here.

In reply, Plaintiff argues that, by its plain language, the RFC allowed only for workplace interactions that were outside the performance of job duties and job functions. According to Plaintiff, the VE "clearly" testified that this limitation on interactions would be work preclusive.

Plaintiff's arguments arising from this testimony are without merit. First, from a fair reading of the transcript, there is no indication that the VE did not understand the meaning of the word "superficial" as defined by the ALJ in her hypotheticals. The ALJ specifically confirmed in the hypothetical what she meant by the term superficial, *i.e.,* for a specific purpose and a short duration. The VE did not ask for clarification. Instead, in response to the hypothetical including that definition, the VE testified that, although Plaintiff could not perform her past work, there were other jobs in the national economy Plaintiff could perform, including assembler, kitchen aide, and labeler. (R. at 70.) Plaintiff's argument to the contrary is wholly speculative. Moreover, the VE's definition, offered later and in response to counsel's questioning, reasonably is interpreted as consistent with the ALJ's definition. That is, the VE described interactions for a specific purpose, *e.g.*, "here's this, here's that, how many of these, how many of those," and expected to be of short duration because they "don't involve the emotional or deep intellectual conversation." (R. at 72.)

Further, Plaintiff's argument that the inability to communicate regarding job duties or functions is work-preclusive assumes a limitation in the RFC that the ALJ simply did not include. Only counsel's question to the VE assumed a limitation that an individual would be unable to

9

communicate about job duties. But neither the RFC nor the ALJ's questions to the VE included such a limitation.

Accordingly, the ALJ did not err in relying on the VE's testimony to conclude that Plaintiff could have performed jobs that existed in significant numbers in the national economy.

**B. RFC**

The focus of Plaintiff's second claimed error is the portion of the RFC stating that Plaintiff "would require a sit/stand option every hour for 3-4 minutes on task." (R. at 27.) Plaintiff contends that the ALJ failed to explain her basis for including a 3-4 minute per hour sit/stand option in the RFC and her basis for concluding that, in the context of that option, Plaintiff would be able to remain on task. Plaintiff also appears to suggest more broadly that the ALJ failed to explain why she did not include any off-task time in the RFC to account for times of increased pain, anxiety attacks, and reduced concentration. In Plaintiff's view, these failures prevent the Court from tracing the ALJ's path of reasoning. The Undersigned disagrees and finds that the ALJ's RFC determination is supported by substantial evidence.

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1545(a). An RFC is an "administrative finding," and the final responsibility for determining an individual's RFC is reserved to the Commissioner. SSR 96-5p, 1996 WL 374183, at *1–2 (July 2, 1996). The Sixth Circuit has explained that "the ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013).

Further, "[t]he Sixth Circuit has made clear that an ALJ's decision must be read as a whole." *Carpenter v. Comm'r of Soc. Sec.*, No. 2:18-CV-1250, 2019 WL 3315155, at *10 (S.D. Ohio July 24, 2019), *report and recommendation adopted*, No. 2:18-CV-1250, 2019 WL 3753823 (S.D. Ohio Aug. 8, 2019).

Plaintiff's claim that the ALJ did not explain her basis for including the sit/stand option inaccurately states the record. The ALJ found Plaintiff's obesity constituted a severe impairment. (R. at 23.) The ALJ discussed that impairment, stating that "with her frame and weight fluctuation, [Plaintiff] maintained body mass indexes between 30-39.9 indicative of obesity and maintained body mass indexes of 40, indicative of morbid obesity." (R. at 25, 29 citing R. at 257, 329, 342, 368, 393, 404, 744, 946, 1510, 1519.) The ALJ also noted that, despite alleging obesity, neither Plaintiff nor her counsel argued for any specific work-related limitations as a result of that condition. (R. at 29.) Nevertheless, the ALJ found that Plaintiff's obesity "reduced [Plaintiff] to the performance of a limited range of light work with reduced standing/walking, sit/stand option, and additional postural limits noted…." (*Id*.) Further, the ALJ found the prior administrative physical findings unpersuasive and specifically adopted a more restrictive RFC. (R. at 37.) As the ALJ explained, this more restrictive RFC included a sit/stand option and was based on "medical evidence submitted since the time of the prior administrative findings, including the hearing level evidence and hearing testimony…." (*Id*.)

With respect to the matter of no off-task time in the RFC, the ALJ engaged in a meaningful assessment of Plaintiff's impairments that may impact her ability to remain on task. The ALJ found Plaintiff had moderate limitations in each of the "paragraph B" categories. (R. at 25.) In

reaching this conclusion, the ALJ discussed Plaintiff's testimony and her self-reports. (R. at 26 citing R. at 269-276.) The ALJ then compared Plaintiff's statements to the medical evidence in the record. For example, the ALJ noted that although Plaintiff reported having a bad memory, "she was routinely observed to have intact memory with fair to good insight and judgment (R. at 26; *see also* R. at 36); that although Plaintiff reported that she did not drive, the record reflected that she was capable of driving during the period under adjudication, a task that required "significant and sustained attention/concentration" and the "application of remembered information" (*Id.* citing R. at 631); and that, although Plaintiff reported concentration problems, "she was able to concentrate long enough to enjoy watching television and reading" and "to pursue activities she enjoyed such as playing games." (*Id.*) Further, the ALJ acknowledged that Plaintiff had been diagnosed with a combination of mental conditions but explained that those conditions "were generally controlled with the use of conservative treatment modalities, such as counseling intervention and medication management." (*Id.*) The ALJ also considered the prior administrative mental findings, finding them to be generally persuasive but did not adopt either the prior initial or reconsideration findings verbatim. (R. at 38.)

In the face of this, Plaintiff has not argued that the ALJ mischaracterized the record in her discussion. Further, Plaintiff has not pointed to any evidence indicating that she required any amount of off-task time. Without such evidence, there was no basis for the ALJ to find that Plaintiff needed such a limitation. Moreover, to the extent Plaintiff asserts the VE testified that more than ten percent of off-task time would be work preclusive, that testimony is not relevant to the ALJ's disability determination because she did not incorporate off-task limitations into the

12

RFC. Accordingly, the Undersigned declines to find that the ALJ was required to incorporate such a restriction into Plaintiff's RFC.

## VII. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, it is therefore, **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED.**

## VIII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report an\d Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a forfeiture of the right to *de novo* review by the District Judge and forfeiture of the right to appeal the judgment of the District Court. Even when timely objections are filed, appellate review of issues not raised in those objections is forfeited. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

| | |
|---|---|
| **Date:** **September 19, 2023** | **/s/ *Elizabeth A. Preston Deavers*** <br> **Elizabeth A. Preston Deavers** <br> **United States Magistrate Judge** |